# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**United States of America,**

<em>Plaintiff,</em>

**v.**

**Case No. 3:20-cr-094**
**Judge Thomas M. Rose**

**Christopher Lee Bryant,**

<em>Defendant.</em>

---

## DECISION AND ORDER OVERRULING MOTION TO SUPPRESS EVIDENCE; FRANKS EVIDENTIARY HEARING REQUESTED. ECF. 25.

---

Pending before the Court is Defendant's Motion to Suppress Evidence; Franks Evidentiary Hearing Requested. ECF. 25.   Therein, Defendant Christopher Lee Bryant requests an order suppressing all evidence obtained from a California state search warrant issued on January 28, 2020 to search Bryant's "AkiHaru#5042" Discord account.   The Government has filed a Response, ECF 27, to which Defendant has replied. ECF 29.

Bryant contends the warrant was issued without probable cause that evidence of alleged crimes would be found at the location to be searched, in violation of the Fourth Amendment. He further asserts the warrant application contained a "bare bones" affidavit, which did not establish a nexus between the place to be searched and evidence from the alleged crime.

## I.    FACTS

On the morning of January 28, 2020, law enforcement executed a search warrant at 1401

1

S. Harbor Blvd #6P, in the city of La Habra, California. This was the residence of a Phineas Cozmiuc, whom law enforcement suspected of uploading images of child pornography based on three "Cyber Tips" submitted by the Discord application to NCMEC (National Center for Missing and Exploited Children). Discord is a proprietary freeware VoIP application and digital distribution platform designed for video gaming communities, that specializes in text, image, video and audio communication between users in a chat channel. Affiant, Corporal Nick Baclit of La Habra Police Department was familiar with Discord through prior child pornography investigations and knew that child pornography is often traded on Discord. (Id.). The NCMEC tip reported two pornographic images and a video depicting a prepubescent minor female, approximately seven years old were uploaded in the city of La Habra. (Id.). LHPD traced these images to Cozmiuc and his Discord account. (Id. at p.101-02). These "Cyber Tips" indicated that two images and one video of child pornography were uploaded in the city of La Habra. Law enforcement eventually identified Cozmiuc's residence at 1401 S. Harbor Blvd #6P as the registered IP address for these uploaded child pornography files.

Cozmiuc was home when law enforcement executed the search warrant. He was detained and admitted that he was in possession of numerous images and videos of child pornography. Cozmiuc provided law enforcement with log in and password information for his computer. A preliminary review of the computer revealed hundreds of images of suspected child pornography. Cozmiuc was transported to the La Habra Police Department where he was interviewed. He was asked if he had ever communicated with anyone who was sending him child pornography of a real victim. Cozmiuc told law enforcement that he was communicating with a person whom he believed was an adult female who had been sending him still images of a four-year old child's

vagina.   The Government alleges Cozmiuc's correspondent was actually a male, namely the Defendant in this case, Bryant.   Cozmiuc said he had met this person originally on the social media platform, Discord, but then agreed to transfer communications to another platform called Wickr.   Wickr is an encrypted platform that serves as an anonymous means of communication. Wickr automatically deletes communications to conceal activity.

Cozmiuc stated that he had been communicating with this female for the past two months, and as recently as one week prior.   He then logged into his Discord account in front of Corporal Nick Baclit of the La Habra Police Department and showed him the profile for this alleged female. The Discord screen name was "AkiHaru#5042".

Having viewed the screen name "AkiHaru#5042" on Cozmiuc's Discord account and heard Cozmiuc's self-incriminating admission to receiving child pornography from it, Baclit applied for a search warrant for all the contents of Bryant's "AkiHaru#5042" Discord account on the same date, January 28, 2020.   In the affidavit for the search warrant submitted to Orange County Magistrate Judge Fred Slaughter, Baclit stated the following, "[t]his is an addendum to the already granted search warrant; which your affiant has attached as an item of reference for the court's review."   Defendant would have the Court view this not as an addendum to an already granted search warrant amending the scope to include the "AkiHaru#5042" discord account, but as a separate application to search Bryant's Discord account.

Magistrate Judge Slaughter authorized the search warrant for Bryant's "AkiHaru#5042" Discord account.   Discord responded, and eventually sent the entirety of the search warrant results to Special Agent Christopher Wallace from Homeland Security Investigations.

After reviewing the results of the search warrant return, Corporal Baclit discovered the user

AkiHaru#5042 had posted pictures of their driver's license on Discord. (Complaint, Doc. 3, p.14). The license was an Ohio driver's license for the Defendant. (Id.). The investigation was then turned over to Special Agent Chris Wallace of Homeland Security Investigations in the Southern District of Ohio. (Id.). Wallace reviewed the chat records of Defendant's Discord account and found child erotica images, as well as a chat between Defendant and Cozmiuc in which Defendant posed as a female and discussed sexual interest in children with Cozmiuc. (Id. at p15-17.). Defendant suggested that they move their conversation over to Wickr, which he described as "a chat app that is safe and has security with messages." (Id. at p.17). This is consistent with Cozmiuc's account of the conversation. (Affidavit, Doc. 25-1, p.103). After additional investigation, Wallace discovered that Defendant was residing at a home in Springfield. (Complaint, Doc. 3, p.15, 18-21). Wallace also discovered that multiple minor children lived in that home, one of whom is a four-year-old female (consistent with the minor victim AkiHaru#5042 discussed with Cozmiuc and sent child pornography images of).

Wallace would eventually obtain a number of search warrants in the Southern District of Ohio pertaining to Bryant, including search warrants for two suspected residences in Springfield, Ohio; a silver Saturn Ion vehicle; the person of Christopher Bryant; and GPS location records for Christopher Bryant's cellular phone.

The affidavits in support of each of these warrants rely almost exclusively on the information derived from the California state search warrant results for Bryant's "AkiHaru#5042" Discord account to establish probable cause. On March 24, 2020, agents executed search warrants at two locations in Springfield, Ohio. Bryant was present at one of them. Law enforcement recovered a Samsung Galaxy cell phone, a flash drive, and two other cell phones from

4

this residence.

Alleged child pornography was found on the Samsung Galaxy cell phone and the flash drive. Bryant was interviewed and made incriminating statements regarding the possession and production of child pornography.

On March 24, 2020, the federal search warrant was executed on Defendant's apartment at which Defendant was present, and several electronic devices were seized. (Id.). Child pornography videos and images were discovered on Defendant's cell phone, including a video approximately thirty-two minutes in length of an adult male having vaginal and anal sex with a minor female toddler in various positions. (Id. at p 23).

After being Mirandized, Defendant was interviewed by Wallace. (Id. at p.24). He admitted to being the user of the Discord username AkiHari#5042, and to communicating with and sending child pornography to Cozmiuc. (Id. at p.24-25). Defendant admitted he had been living at the home in Springfield between August 2019 and February 2020, with the family there, to include several minor children, one of whom was a four-year-old female. (Id. at p.25). Defendant admitted to producing images on his cell phone of the genitalia of the four-year-old female and distributing those images to other individuals online. (Id.).

A later search of Defendant's cell phone revealed images of that four-year-old female in various states of clothing, to include a close-up image of her unclothed vagina. Metadata from that photograph showed it was created on March 19, 2020, only five days prior. Defendant admitted that a specific user on Discord (not Cozmiuc) would request more and more "lewd" images of the four-year-old female, and that Defendant would comply by producing such images and distributing them to that user. (Id.). Defendant admitted he was still in regular contact with

that user and had last spoken to him as recently as a week prior. (Id. at p.26). Defendant admitted to producing photographs of the genitalia of the minor male child living in the home as well. (Id. at p.25). Defendant admitted he produced these images when he was alone with the children babysitting them. (Id.).

Defendant stated that he had relatives in California, and that he used to babysit his niece (a minor), who was located in California. (Id. at p.26). Defendant stated that during this babysitting he rubbed his hand on his niece's unclothed vagina, and he took photographs of this. (Id.). A later search of Defendant's electronic devices revealed images consistent with Defendant's admissions.

## II. ANALYSIS

The Fourth Amendment requires that search warrants be issued only "'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.'" *United States v. Baker*, 2019 WL 1125685, at *3 (S.D. Ohio Mar. 12, 2019) (Rose, J.) (citation omitted). "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Davidson*, 936 F.2d at 859, quoting *Loggins*, 777 F.2d at 338. This is not "a high bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). Probable cause does not require "certainty," *United States v. Silvey*, 393 F. App'x 301, 306 (6th Cir. 2010), but rather "only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014)(brackets omitted); see also *Baker*, 2019 WL 1125685, at *3 (noting that probable cause "requires only a 'probability or substantial chance of criminal activity, not an actual showing of such activity.'" (citation omitted)).

When assessing the sufficiency of allegations in a warrant affidavit, "[t]he affidavit should

be reviewed in a commonsense – rather than a hyper technical – manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004). In other words, the reviewing court must "consider the whole picture" and must not engage in the "sort of divide-and-conquer analysis" under which a movant attempts to pick off the affidavit's allegations "one by one." *Wesby*, 138 S. Ct. at 588 (internal quotation marks omitted). Further, "[the affidavit is [to be] judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (*en banc*). Ultimately, the reviewing court "must give great deference to a magistrate's determination of probable cause." *Brown*, 732 F.3d at 573. "'An issuing judge's findings of probable cause . . . should not be reversed unless arbitrarily exercised.'" *United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009) (quoting *United States v. Miller*, 314 F.3d 265, 268 (6th Cir. 2002)). So long as the judge who issued the warrant had a 'substantial basis' for believing there to be [probable cause, [the reviewing court] must affirm." *Davidson*, 2019 WL 1220845, at *3, see also *Baker*, 2019 WL 1125685, at *4.

In order to obtain a *Franks* hearing, a defendant must make a substantial preliminary showing that (1) the affiant's statement was deliberately false or demonstrated reckless disregard for the truth, *Franks v. Delaware*, 438 U.S. 152, 155-56, 171 (1978), and (2) the challenged statement or omission was essential to the magistrate's finding of probable cause. Id. at 155-56, 171-72. To the extent a defendant relies on "recklessness," the test is a subjective one. *United States v. Cican*, 63 Fed. App'x 832, 835-36 (6th Cir. 2003); *United States v. Colquitt*, 604 Fed. App'x 424, 429-30 (6th Cir. 2015). A law enforcement officer's statement is made with "reckless

disregard for the truth" when he or she subjectively "entertains serious doubts as to the truth of his [or her] allegations*." United States v. Cican*, 63 Fed. App'x at 836.

"Only after the defendant makes this showing may the court consider the veracity of the statements in the affidavit or the potential effect of any omitted information." *United States v. Archibald*, 685 F.3d 553, 558-59 (6th Cir. 2012). "Without this substantial showing, courts may not make a *Franks* ruling regarding the veracity of statements made in an affidavit." Id. at 559. A defendant seeking a *Franks* hearing "should point out specifically the portion of the warrant affidavit that is claimed to be false." *Franks*, 438 U.S. at 170.

### A. Probable Cause to Search the Discord Account.

Defendant asserts the search warrant affidavit was deficient and also argues the warrant is defective because law enforcement should have taken other investigative steps first. First, Defendant asserts that "there was no nexus shown between the place to be searched (Bryant's 'AkiHaru#5042' Discord account), and purported evidence to be found (still images of a four-year old child's vagina)." (Motion, Doc. 25, p.92). A nexus does exist, and this statement also mistakenly limits the evidence to be searched for.

An issuing judge's probable cause determination is entitled to "great deference." *Brown*, 732 F.3d at 573. "Probable cause exists when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Davidson*, 936 F.2d at 859, quoting *Loggins*, 777 F.2d at 338. The evidence to be found refers to not only the pornographic image of the four-year-old child, but also any contraband (any child pornography) or evidence of that crime. Evidence of the crime of child pornography encompasses more than simply the child pornography images themselves; it includes communications about

child pornography, communications about sexual interest in children, communications about access to children, child erotica materials, as well as any information that could be used to identify the offender or the victim.

The affiant requested a warrant for "the IP address, device ID, username, email addresses, messages, images, transient VoIP Data, and other content sent using chat features" associated with the Discord account. (Affidavit, Doc. 25-1, p.100, 103). Such information could be used to identify and locate the offender. The affidavit detailed how Cozmiuc's IP address and email addresses led law enforcement to initially identify Cozmiuc as a distributor of child pornography. (Id. at 101-02).

Defendant misunderstands the nature of the investigation: it was not an investigation into a single instance of possession or distribution of child pornography, intending only to recover one specific image. This was an investigation into production of child pornography, by a suspect who had access to a four-year-old child and appears to have been engaging in the ongoing exploitation of that child. The goal of the investigation was not just to locate a specific image, but to identify the offender and the child to stop that exploitation from continuing.

A review of the search warrant shows that there was a substantial nexus between the place to be searched (the Discord account subscriber information and content) and the items sought (child pornography or evidence of child pornography crimes). Specifically, the affidavit contained the following information:

> • The affiant's experience and training: Corporeal Baclit had been a
> police officer for over 18 years and is assigned as a sex crimes
> investigator and is a member of the Internet Crimes Against

9

Children Task Force. He was familiar with Discord and knew child pornography is often traded on that application; he had personally investigated several incidents where child pornography was traded on Discord. (Affidavit, Doc. 25-1, p.101).

• The affiant also detailed his knowledge and experience concerning the behavior of child pornography possessors, distributors, and producers, and the value the evidence sought in the search warrant could provide to the investigation. (Id. at p.104).

• Information provided by Discord allowed law enforcement to locate Cozmiuc. The email address and IP address of the Discord user who uploaded the child pornography were linked to Cozmiuc. (Id. at p.101-02).

• When law enforcement encountered Cozmiuc on January 28, 2020, he was immediately cooperative and forthcoming. Cozmiuc volunteered that he knew why law enforcement was there, and that he was in possession of over 100 images and videos of child pornography. (Id. at p.102-03).

Contrary to Defendant's assertion that the "only information" in the affidavit "comes from the uncorroborated and self-serving statements of Cozmiuc after his arrest for child pornography," (Motion, ECF 25, PageID 92; Reply, ECF 28, PageID 266), Cozmiuc's statements were corroborated and were all consistent with what law enforcement observed or knew, to wit:

• When Cozmiuc was asked if he was aware of any child

10

pornography producers, he was forthcoming and advised he was communicating with a user he believed to be a female who was producing images of a four-year-old female. Cozmiuc was able to corroborate this by showing Corporal Baclit that individual's username when he pulled up his Discord account – AkiHaru#5042. (Id.).

• Cozmiuc statement that he met AkiHaru#5042 on Discord was consistent with Corporal Baclit's knowledge that Discord was often used to discuss child sexual abuse and trade child pornography, and his personal experience investigating such crimes.   Baclit wrote in the affidavit, "In October and November of 2019, your affiant received three CyberTip Reports from NCMEC . . . documenting the possession and transmission of child pornography through the social medial platform Discord. . . . Based on your affiant's training and experience, your affiant knows that child pornography is often traded on this application.   Your affiant has investigated several incidents where child pornography was traded on the Discord application." (Id.).

• That Cozmiuc was in ongoing communication with an individual who supplied him with images of a prepubescent four-year-old female was consistent with what was known of Cozmiuc's preferences at that point – the NCMEC tip had been of child

pornography images also of a prepubescent minor female, roughly seven years in age. (Id. at 101).

• Cozmiuc admitted that after communicating on Discord, he and AkiHaru#5042 agreed to move their conversation to another platform called Wickr. (Id. at PageID 103). This is consistent with Corporal Baclit's knowledge and experience of how these platforms work and how child pornography collectors and creators behave. Corporal Baclit wrote that "Your affiant knows this platform is encrypted and serves as a means of communication in an anonymous setting. The communication is automatically deleted to conceal illegal activity." (Id. at p.103). He also detailed that communications regarding child pornography, and the images and videos themselves are "usually maintained in a secure place" and are "stored in a manner to avoid detection by law enforcement." (Id.).

• Cozmiuc had advised he possessed over 100 images of child pornography, and an initial search of Cozmiuc's computer by Corporal Baclit confirmed this. (Affidavit, Doc. 25-1, p.102-03).

All of Cozmiuc's statements were consistent with either other evidence, or with law enforcement's knowledge of the behavior of child pornography consumers, the operation of Discord, the operation of Wickr, or the use of those platforms for child exploitation crimes. The evidence included in the affidavit, viewed in the totality of the circumstances, establishes that there

12

was at a minimum a "fair probability" that "contraband or evidence of a crime" would be found on the AkiHaru#5042 Discord account. *Davidson*, 936 F.2d at 859, quoting *Loggins*, 777 F.2d at 338. This evidence certainly established the "kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Kaley*, 571 U.S. at 338 (2014)(brackets omitted).

Moreover, a face-to-face tip from an identified informant is entitled to greater weight than that from an anonymous informant because officers have a first-hand opportunity to assess the informant's credibility and demeanor, and such persons may be exposing themselves to prosecution for lodging false complaints and/or being in the presence/possession of contraband. *United States v. Valentine*, 232 F.3d 350, 354-55 (3d Cir. 2000) (and cases cited therein). Here, the issuing magistrate was not relying on an out-of-the-blue accusation, the officers were swimming in evidence of child pornography at Cozmiuc's residence. Cozmiuc's statements regarding AkiHaru#5042 were self-incriminating. Looking at the whole, the statements are reliable.

Defendant also attacks the search warrant by insisting law enforcement should have undertaken other investigatory tactics first, such as taking over Cozmiuc's Discord account or having Cozmiuc reach out to AkiHaru#5042 on Discord to attempt to illicit incriminating statements. (Motion, Doc. 25, p.93). This rationale has been rejected: "The affidavit is [to be] judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at 975. The information contained in the affidavit gave the issuing judge a "substantial basis" for finding probable cause, *Davidson*, 2019 WL 1220845, at *3, and the issuing judge's discretion in granting the warrant was not "arbitrarily exercised." *Higgins*, 557 F.3d at 389 (internal citations omitted). Defendant has not overcome the "great

deference" a reviewing court "must give . . . to a magistrate's determination of probable cause." *Brown*, 732 F.3d at 573.

**B. Good-Faith Exception to the Exclusionary Rule.**

Even if the Court were to have found an insufficient basis for finding probable cause, suppression would also be inappropriate here under the good-faith exception of *Leon*, 468 U.S. 897. The purpose of the good faith exception is "not to bar from admission evidence 'seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'" *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006), quoting *Leon*, at 905. The *Leon* good-faith exception has four exceptions: (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient. *Hython*, 443 F.3d at 484.

The first circumstance under which the *Leon* good faith exception would not apply is if the issuing magistrate was misled by information that the affiant knew was false or would have known was false save for his reckless disregard of the truth. This goes to the heart of Defendant's request for a *Franks* hearing and will be addressed below.

The second circumstance in which the *Leon* good faith exception would not apply is if the

issuing magistrate failed to "perform his 'neutral and detached' function'" and instead served "'merely as a rubber stamp for the police'" *Leon*, 468 U.S. at 914 (internal citations omitted), or who "acts instead as 'an adjunct law enforcement officer[.]'" Id., quoting *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 326–27 (1979). Defendant does not allege that this occurred. The standard to find that an issuing magistrate wholly abandoned their judicial role is a high one and there is no evidence that such flagrant behavior occurred in the instant case.

The third circumstance under which the *Leon* good faith exception will not apply is if the affidavit "was nothing more than a 'bare bones' affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[.]" *Hython*, 443 F.3d at 484. Defendant argues this is the case here. (Motion, Doc. 25, at 94).

However, the standard of proof required for an officer's reliance on a warrant to be objectively reasonable is low one. "The conclusion that the officers' reliance on the warrant was objectively reasonable requires a 'less demanding showing than the "substantial basis" threshold required to prove the existence of probable cause.'" *United States v. Soto*, 794 F.3d 635, 646 (6th Cir. 2015)(internal citations omitted). Instead, the label of a "bare bones" affidavit "is reserved for an affidavit that merely states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Acosta-Barrera*, 819 F. App'x 366, 371 (6th Cir. 2020)(internal citations omitted).

> For an officer's reliance on a warrant to have been objectively reasonable, the affidavit need only "contain 'a minimally sufficient nexus between the illegal activity and the place to be searched.'" Because this [standard is less than] than probable cause, the affidavit

> "need not establish a 'substantial basis,' only 'some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched.'"

Id. at 371-72(internal citations omitted).

The instant warrant affidavit was hardly "so skimpy, so conclusory, that anyone looking at the warrant would necessarily have known it failed to demonstrate probable cause." *United States v. Asgari*, 918 F.3d 509, 513 (6th Cir. 2019). Instead, the affidavit contained sufficient facts to meet the higher standard of showing that the issuing judge had a "substantial basis" for finding probable cause, *Davidson*, 2019 WL 1220845, at *3. Accordingly, this exception does not preclude the *Leon* good faith exception from applying in this case.

The fourth circumstance under which the *Leon* good faith exception will not apply is where the warrant is facially deficient or otherwise plainly invalid, rendering the officer's reliance on such a warrant to have been in bad faith or not objectively reasonable. *Hython*, 443 F.3d at 484. Such a circumstance will apply where the warrant was facially deficient, for example if it failed to identify the place to be searched or the things to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). See also *United States v. Lazar*, 604 F.3d 230, 237 (6th Cir. 2010).

Defendant does not allege that this occurred. The warrant did particularize the place to be searched and things to be seized on the cover page of the warrant and in the body of the affidavit. (Affidavit, Doc. 25-1, p.100, 103). Because the warrant was not facially deficient, this circumstance does not preclude the application of the *Leon* good faith exception. Because none of the above four circumstances apply, the *Leon* good faith exception applies in this case even if the affidavit had lacked probable cause.

**C. Evidentiary Hearing.**

16

Defendant seeks an evidentiary hearing. As the Sixth Circuit has repeatedly held, "[a]n evidentiary hearing is required only if [a] motion [to suppress] is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2009) (internal quotation marks omitted); see also *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019) ("[A] defendant is not entitled to an evidentiary hearing if his argument is 'entirely legal in nature.'"). A suppression motion such as Defendant's, premised only on the argument that "[a] search warrant was not supported by probable cause" raises only "questions of law." *United States v. Knowledge*, 418 F. App'x 405, 408 (6th Cir. 2011); see also *United States v. Lawson*, 476 F. App'x 644, 649 (6th Cir. 2012)(defendant's "challenge[] [of] *Leon*'s applicability to the case is also a pure legal question."). Thus, Defendant is not entitled to an evidentiary hearing on his Motion.

## III. *Franks* Hearing

The second half of Defendant's Motion is a request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Defendant bears the burden to demonstrate he is entitled to such a hearing, and Defendant has failed to carry that burden.

## A. Legal Standard

To establish he is entitled to a *Franks* hearing, Defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause . . . ." *Franks* at 155-56. The burden is on the Defendant. "A defendant who challenges the veracity of statements made in an affidavit that

17

formed the basis for a warrant has a heavy burden." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). The United States Supreme Court in *Franks* stressed that "[t]here is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." Id. at 171.

To mandate an evidentiary hearing, Defendant's showing "must be more than conclusory and must be supported by more than a mere desire to cross-examine." Id. "Allegations of negligence or innocent mistake are insufficient." Id. Rather, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." Id.

A *Franks* hearing is not an opportunity for Defendant to go on a fishing expedition for the evidence necessary to make such a showing, nor to investigate for discovery. *United States v. Schumacher*, 611 F. App'x 337, 341 (6th Cir. 2015)(" "[The defendant] appears to have confused the purpose of a *Franks* hearing, which is to permit the court to determine whether law enforcement agents made deliberate falsehoods to secure a search warrant, not to provide discovery for the defendant."). A defendant must make a substantial preliminary showing as a threshold matter to trigger a *Franks* hearing. However, this substantial preliminary showing of a knowing and deliberate falsehood or reckless disregard for the truth is only the first prong Defendant must satisfy to mandate a *Franks* hearing.

Even if Defendant can make such a showing, he must then demonstrate that if the challenged information was removed, the affidavit would no longer contain probable cause. If a defendant fails to show the removal of the challenged information would be fatal to the warrant, no hearing is required. "Finally, if these requirements are met, and if, when material that is the

subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171-72. See also *Bennett*, 905 F.2d at 934.

**B.      Analysis**

Defendant requests a *Franks* hearing based on the following statement in the affidavit: "[t]his is an addendum to the already granted search warrant; which your affiant has attached as an item of reference for the court's review." (Doc. 25-1, p.101).   Defendant argues that this was a false statement designed to mislead the issuing magistrate.

The challenged language is a reference to the fact that there were several search warrants already issued in this case.   The rest of the challenged affidavit details how the investigation led to Cozmiuc, and then to Defendant.   The affiant describes how, during the course of the investigation into Cozmiuc, search warrants were issued for (1) Cozmiuc's Yahoo email account (which was linked to the Discord account that uploaded the child pornography which was the subject of the NCMEC report), (2) Cozmiuc's IP address (the IP address used to upload that child pornography), and later (3) for Cozmiuc's residence (which was associated with the aforementioned IP address). (Affidavit, Doc. 25-1, p.102).

There is no evidence of an intention to mislead the issuing magistrate.   The affiant discussed all three of the prior search warrants in context to explain the history of the investigation. The affidavit made plain that these three prior search warrants related to Cozmiuc, not Defendant; they did not provide further evidence against Defendant, instead they merely explained how the investigation had arrived at its present point.

Neither is there evidence that this statement about a previously issued search warrant could

19

have somehow misled the issuing magistrate. Despite the language stating that an addendum is attached, it would have been obvious to the magistrate that there were no such pages attached to the four-page search warrant and affidavit. Defendant asserts that such a statement may have been "an intentional tactic" on the part of the affiant "to ensure a more cursory 'rubber stamp' by a state magistrate judge[.]" (Id.).

While this statement implies significant deceit on the part of the affiant, it underestimates the issuing judge, and assumes the judge did not even read the document presented to them. These theories are unsupported by evidence, and run up against the substantial facts laid out in the affidavit that support the magistrate's probable cause determination.

An affiant's awkward phrasing is not the same as "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit. . . ." *Franks* at 155-56. The affiant's language about an addendum being attached to the warrant, even if intentionally inserted is insufficient to trigger a hearing, because without it, the warrant application still supports a finding of probable cause. Id. See also *United States v. Green*, 572 F. App'x 438, 443 (6th Cir. 2014).

Defendant has failed to overcome the "presumption of validity" granted to search warrants. Id. at 171. He has neither made "allegations of deliberate falsehood or of reckless disregard for the truth," nor offered any proof to substantiate any such allegations. Instead, Defendant's arguments regarding the statement at issue are conclusory and rebutted by examining the face of the warrant itself. Id. Defendant has thus failed to meet his burden to show he is entitled to a *Franks* hearing.

Even if Defendant is able to make a substantial preliminary showing that the affiant

deliberately included information that he knew was false or that he was reckless with regard to the truth of the information, Defendant still is not automatically entitled to a *Franks* hearing. Instead, Defendant must also establish that the challenged information was material, and that excising the challenged material would deprive the affidavit of probable cause. *Bennett*, 905 F.2d at 934 (6th Cir. 1990)("If probable cause exists absent the challenged statements, a defendant is entitled to no more[.]"); *Mastromatteo*, 538 F.3d at 546. See also *United States v. Green*, 572 F. App'x 438, 441– 42 (6th Cir. 2014). This the Defendant does not do. Removing the challenged language removes none of the information that supplied the issuing magistrate with probable cause. The affidavit contained more than sufficient information to establish that there was a "'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime" would be found in the requested subscriber information and content of Defendant's Discord account. *Davidson*, 936 F.2d at 859, quoting *Loggins*, 777 F.2d at 338. The affidavit at issue here is self-contained. The removal of the challenged language—and the absence of an attached addendum—does not change its strength or alter the probable cause analysis.

Because Defendant cannot establish that excising the challenged language would deprive the affidavit of probable cause, he cannot show he is entitled to a *Franks* hearing and his request will be denied.

## IV.    CONCLUSION

Because the affidavit supporting the application for the search warrant contained sufficient support for a finding of probable cause even when omitting language Defendant asserts was false, Defendant's Motion to Suppress Evidence; Franks Evidentiary hearing ECF 25 is **DENIED**.

**DONE** and **ORDERED** this Sunday, February 21, 2021.


s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE